UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 21-cv-10111-GAO

ROBERT AWALT, individually and on behalf of all others similarly situated,
Plaintiff,

v.

GENERAL MOTORS, LLC,
Defendant.

OPINION AND ORDER
March 31, 2023

O'TOOLE, D.J.

The plaintiff, Robert Awalt, has brought this putative class action on behalf of himself and others who purchased or leased certain General Motors vehicles for the model years 2010 through 2014 that were fitted with an allegedly defective engine. Awalt contends that the engine consumes an abnormally high amount of oil exceeding industry standards for reasonable oil consumption and resulting in low oil levels, insufficient lubricity levels, and internal engine component damage. He asserts claims against General Motors, LLC, alleging violations of the Massachusetts Consumer Protection Act, Massachusetts General Laws Chapter 93A (Count I), Breach of Express Warranty in violation of Massachusetts General Laws Chapter 106 §§ 2-313 and 2A-210 (Count II), Breach of Implied Warranty of Merchantability (Count III), Fraudulent Concealment/Omission (Count IV), Unjust Enrichment (Count V), and Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 (Count VI). General Motors has moved to dismiss the complaint.

**I.**     **Factual Background**

Awalt alleges that General Motors produced vehicles (the "Class Vehicles") fitted with a General IV 5.3 Liter Vortec 5300 LC9 engine ("Generation IV Vortec 5300") that contains defective piston rings which cause excessive oil consumption (the "defect" or "Oil Consumption Defect"). The Oil Consumption Defect, detailed in the complaint and summarized here in brief, appears to be in large part related to the coating on the piston rings. The coating allegedly wears prematurely, reducing the sealing capacity of the piston rings and permitting oil to travel into the combustion chamber, where it is continuously burned by the engine's power stroke, resulting in greater use of oil than should be necessary. The purported defect allegedly reduces engine lubricity, which, in turn, can cause engine damage and malfunction.

Awalt alleges that General Motors knew about the Oil Consumption Defect as early as 2008. Consumer complaints about excessive oil consumption were numerous. A General Motors engineer recognized that it likely resulted from a problem with the piston rings. In 2009, General Motors launched an investigation to determine its cause, and in 2010, the investigation team issued a report which noted that the oil consumption "clearly follows the piston/ring assembly." (Compl. ¶ 98 (dkt. no. 1).)

Awalt pleads that General Motors made various mitigation attempts, but none resolved the excessive oil consumption problem. It also issued Technical Service Bulletins to dealers addressing the defect, but the suggested fixes did not solve it.

Awalt further pleads that General Motors did not inform buyers or lessees about the Oil Consumption Defect. It instead "extensively advertised the performance benefits" of the affected engine and told consumers that the Class Vehicles were "dependable, long-lasting, and of the

highest quality." (Id. ¶¶ 150–51.) Various brochures and websites for General Motors vehicles advertised fuel efficiency, reliability, strength, and safety.

According to his complaint, Awalt purchased a new Chevrolet Silverado truck equipped with a General IV Vortec 5300 engine in August 2012. Prior to his purchase, he had seen commercials promoting the truck's reliability and durability, and he saw a Monroney sticker[1] on the vehicle at the time of purchase. He did not receive notice from General Motors regarding the defect he now alleges. He claims that he has noticed that his truck consumes a high volume of oil.

**II.    Discussion**

      A.    Count I: Massachusetts Consumer Protection Act, Mass. Gen. Laws. ch. 93A

Awalt alleges that General Motors violated the Massachusetts consumer protection statute, Chapter 93A, by failing to disclose the Oil Consumption Defect to purchasers and lessees of the Class Vehicles. The statute prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2(a). To state a claim under Chapter 93A, a plaintiff must plausibly allege "(1) a deceptive act or practice on the part of the seller; (2) an injury or loss suffered by the consumer; and (3) a causal connection between the seller's deceptive act or practice and the consumer's injury." Casavant v. Norwegian Cruise Line, Ltd., 919 N.E.2d 165, 169 (Mass. App. Ct. 2009).

General Motors argues that the claim fails to adequately allege deceptive conduct and causation because Awalt does not plead that he personally encountered, relied on, or purchased his vehicle because of any specific General Motors advertisements, nor that General Motors knew of the Oil Consumption Defect at the time of the sale.

---

[1] A Monroney sticker is a label required by law to be displayed on new vehicles containing information about the vehicle and the manufacturer's suggested retail price.

As to the former, Awalt asserts General Motors failed to disclose a serious safety defect which would have influenced him not to enter the transaction. See 940 Mass. Code Regs. § 3.16. He alleges that General Motors sold vehicles with the Oil Consumption Defect, it generally advertised its vehicles as safe, numerous drivers of cars with the defect complained about problems related to the excessive oil consumption and associated issues, General Motors did not disclose the defect to buyers, and it recommended to dealers fixes it knew would not remedy the defect. That is sufficient at this stage. See, e.g., Costa v. FCA US LLC, 542 F. Supp. 3d 83, 100–01 (D. Mass. 2021).

As to the latter, Awalt sufficiently alleges that General Motors was aware of the defect when he purchased his vehicle in 2012. He pleads, for instance, that General Motors was aware of numerous consumer complaints about oil consumption. He also pleads that General Motors knew of the defect as early as 2008 when a General Motors engineer recognized that it likely resulted from a problem with the piston rings, an investigation followed in 2009, the investigation demonstrated to General Motors that the oil consumption follows the piston/ring assembly, and General Motors made design changes to the engine prior to his purchase. (Compl. ¶¶ 19, 95–103, 115.)

B.  Count II: Breach of Express Warranty (Mass. Gen. Laws ch. 106 §§ 2-313 and 2A-210)

Count II alleges breach of express warranty. Awalt claims that a Limited Warranty formed a basis of the bargain when he purchased the vehicle with the Oil Consumption Defect and that General Motors breached the warranty by failing to repair his vehicle's engine.

The parties dispute the extent of the warranty's coverage, which states that the "warranty covers repairs to correct any vehicle defect, not slight noise, vibrations, or other normal

4

characteristics of the vehicle related to materials or workmanship occurring during the warranty period." (Compl. ¶ 222.) General Motors claims that the alleged design defect is not covered because it warrants against defects in materials and workmanship only. In response, Awalt argues it covers any vehicle defect, including design defects. He contends that the warranty language reads to cover "any vehicle defect" except "slight noise, vibrations, or other normal characteristics of the vehicle related to materials or workmanship." Because the Oil Consumption Defect is not a normal characteristic of the vehicle related to materials or workmanship, Awalt argues, it is not excluded by the "except" clause and is therefore covered by the express warranty.

Under a plain reading of the sentence, Awalt's interpretation is not implausible: the phrase "related to materials and workmanship" modifies "other normal characteristics of the vehicle." Slight noise and vibrations are two examples of "normal characteristics of the vehicle related to materials or workmanship." Therefore, the provision can reasonably be interpreted to cover "any vehicle defect," except for (1) slight noise; (2) vibrations; or (3) other normal characteristics of the vehicle related to materials or workmanship. At the very least, the provision is ambiguous, and any ambiguity should be resolved against General Motors at this stage.

Consequently, Awalt may proceed on his breach of express warranty claim.

C. Count III: Breach of Implied Warranty of Merchantability

Awalt also alleges breach of the implied warranty of merchantability. To recover on a claim of breach of the implied warranty of merchantability in the sale of a vehicle under Massachusetts law, a plaintiff must show that the vehicle "was not fit for the ordinary purposes for which an automobile is generally used and that the defect existed at the time the vehicle was sold or leased. The ordinary purpose of a vehicle is to provide safe, reliable transportation." Giesen v. Herb Chambers of Sudbury, Inc., No. CV 13-12557-JCB, 2015 WL 12697648, at *8 (D. Mass. May 13,

2015) (citations omitted); accord Finigan-Mirisola v. DaimlerChrysler Corp., 869 N.E.2d 632, at *1 (Mass. App. Ct. 2007) (unpublished table decision). "The implied warranty of merchantability 'does not impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead, it provides for a minimum level of quality.'" Finigan-Mirisola, 869 N.E.2d 632, at *1 (quoting Gen. Motors Corp. v. Brewer, 966 S.W.2d 56, 57 (Tex. 1998)).

Here, as General Motors argues, the pleadings do not plausibly allege that Awalt's car was not fit for its ordinary purpose of providing safe, reliable transportation. Awalt claims that the Class Vehicles, including his, are unfit for their ordinary purpose because the defect can lead to drivability problems, including engine damage, misfires, and power loss, which can cause accidents or leave occupants stranded in unsafe situations. However, he apparently still drives his truck, and he has not alleged that he has experienced any of those potential safety problems or that the Oil Consumption Defect has otherwise interfered with his safe operation of the vehicle.

Consequently, Count III is dismissed.

D.     Count IV: Fraudulent Omission

Awalt's fourth count alleges a claim of fraudulent omission. His general theory is that disclosure of the known Oil Consumption Defect was necessary to dispel misleading impressions about the reliability and durability of the Class Vehicles created by marketing materials.

A claim of fraud by omission "requires both concealment of material information and a duty requiring disclosure." Squeri v. Mount Ida Coll., 954 F.3d 56, 70 (1st Cir. 2020) (quoting Sahin v. Sahin, 758 N.E.2d 132, 138 n.9 (Mass. 2001)). A duty to disclose arises where there is (i) "a fiduciary or other similar relation of trust and confidence," (ii) there are "matters known to the speaker that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading," or (iii) "the nondisclosed fact is basic to, or goes to the essence of, the

transaction." Id. at 71 (quoting Knapp v. Neptune Towers Assocs., 892 N.E.2d 820, 824 (Mass. App. Ct. 2008)).

Awalt has not plausibly alleged that General Motors was under a duty to disclose the defect based on these allegations. He has not identified a specific statement concerning a particular safety feature that was "partial or ambiguous" such that General Motors was required to disclose the defect to prevent the statements from being misleading. The general promotions referencing fuel-efficiency, safety, and reliability are more akin to non-actionable puffery and do not trigger a duty to disclose all safety-related information about all vehicles. Furthermore, Awalt does not allege that he saw or heard anything more specific than general advertisements as to reliability and durability.

The fraudulent omission claim in Count IV is therefore dismissed.

E.     Count V: Unjust Enrichment

Awalt's fifth count is for unjust enrichment. General Motors argues that Awalt's unjust enrichment claim cannot proceed because Massachusetts law prohibits unjust enrichment claims where there is an express contract and the existence of adequate legal remedies. Although the Limited Warranty may form an express contract between the parties, as General Motors contends, the parties dispute its applicability. Awalt is entitled to plead both claims in the alternative at this point in the litigation.

F.     Count VI: Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301

Count VI alleges a violation of the Magnuson–Moss Warranty Act ("the MMWA"). The MMWA is a federal statute that provides a cause of action for a consumer who is harmed by the failure of a warrantor to comply with a warranty obligation. 15 U.S.C. § 2310(d)(1). In relevant part, the statute provides that a consumer who is damaged by the failure of a warrantor to comply

7

with a warranty obligation can bring suit in a federal district court, subject to certain amount in controversy and numerosity restrictions. Specifically, an MMWA claim is not cognizable "if the action is brought as a class action, and the number of named plaintiffs is less than one hundred." Id. § 2310(d)(3)(C).

General Motors asserts that a single named plaintiff like Awalt cannot maintain a class claim under the MMWA because the statute requires at least 100 named plaintiffs. Awalt contends that he need not identify 100 plaintiffs because there is federal jurisdiction over the case—including the MMWA claim—under the Class Action Fairness Act ("CAFA"), which does not contain the numerosity requirement.

It appears to be an open question as to whether CAFA overrides the MMWA's statutory requirement to name 100 plaintiffs. Case law addressing the "interplay between CAFA and MMWA numerosity requirements is scarce," Floyd v. Am Honda Motor Co., 966 F.3d 1027, 1033 (9th Cir. 2020), and district courts have come to inconsistent conclusions. In this district, Judge Kelley recently analyzed the available case law and concluded that CAFA may not be used to circumvent the numerosity requirement of the MMWA. Rezendes v. Mitsubishi Motors N.A., No. 22-CV-10211-AK, 2023 WL 1864405, at *6–8 (D. Mass. Feb. 9, 2023). The court noted the absence of any precedent from the First Circuit and found persuasive a Ninth Circuit decision, Floyd v. American Honda Motor Co., 966 F.3d 1027, based on principles of statutory interpretation consistent with law binding in this circuit:

> In resolving a dispute over the language of a statute, the Court begins with the language of the statute itself. In re Fin. Oversight & Management Bd., 919 F.3d 121, 128 (1st Cir. 2019) (citing Landreth Timber Co. v. Landreth, 471 U.S. 681, 685 (1985)). If the statute's language is plain, the sole function of the courts is to enforce it according to its terms. Id. (citation omitted). Here, the text of the MMWA contains a clear requirement that any class action complaint brought pursuant to the statute name at least 100 plaintiffs. 15 U.S.C. § 2310(d)(3) (providing that "no claim shall be cognizable . . . if the action is brought as a class action, and the

8

> number of named plaintiffs is less than one hundred"); see Floyd, 966 F.3d at 1034. Thus, the MMWA plainly requires a putative class action plaintiff to name at least 100 individuals.
>
> The Court may dispense with this statutory requirement only if it finds that Congress repealed it through passage of a subsequent statute; here, CAFA, which was enacted decades after the MMWA. However, "repeals by implication are disfavored," and "where two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1017 (1984) (internal quotation marks and citations omitted); see Floyd, 966 F.3d at 1034. Courts presume that "Congress will specifically address preexisting law when it wishes to suspend its normal operations in a later statute," and the burden is on the party arguing that the older statute was repealed to show "a clearly expressed congressional intention" that "two statutes cannot be harmonized." Epic Sys. Corp. v. Lewis, 138 S.Ct. 1612, 1624 (2018); see Floyd, 966 F.3d at 1035 ("The two statutes would have to present an irreconcilable conflict to overcome the strong presumption against implied repeals.").
>
> Here, as in Floyd, the party—Mr. Rezendes—asserting that CAFA has impliedly repealed the MMWA's 100-named-plaintiff requirement cannot meet this tall task. Rather, there is no manifest evidence that Congress intended to overrule the MMWA by enacting CAFA, and the two statutes may exist in harmony, with the MMWA providing limits on the jurisdiction of federal district courts alone over a specific type of class action claim.

Rezendes, 2023 WL 1864405, at *7–8.

The court went on to dismiss the MMWA claim for lack of subject matter jurisdiction.

I agree with Judge Kelley's reasoning and come to the same conclusion for substantially the same well-stated reasons. Awalt's class MMWA claim is dismissed for failing to meet its numerosity requirement.

### III.  Conclusion

For the foregoing reasons, defendant's Motion to Dismiss Class Action Complaint (dkt. no. 16) is GRANTED in part and DENIED in part. Counts III, IV, and VI are dismissed.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge